UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BARRY ROBBINS,

      Plaintiff,

v.

NATIONWIDE ADVANTAGE
MORTGAGE COMPANY, et al.,

      Defendant.

Case No. 10-CV-822-JPS

ORDER

   This action arises out of a residential mortgage transaction. Plaintiff Barry Robbins ("Robbins") claims that defendant Nationwide Advantage Mortgage Company ("Nationwide") violated certain provisions of the Truth in Lending Act, 15 U.S.C. § 1601 *et. seq.* ("TILA") and Federal Reserve Board Regulation Z, 12 C.F.R. part 226. Specifically, plaintiff seeks rescission of his mortgage and recovery of damages from defendant for its alleged failure to meet TILA disclosure requirements. (Compl. ¶ 1). This matter is before the court on the parties' cross-motions for summary judgment. For the reasons stated below, the court will grant in part and deny in part plaintiff's motion for summary judgment. The court will deny the defendant's motion for summary judgment.

1.  Background

   On October 6, 2006, plaintiff and his wife obtained a $193,865.00 mortgage loan from Central States Mortgage Corporation ("CSMC"). (Pl.'s Statement of Material Facts [PSMF] ¶ 3). According to Robbins, at the closing of the mortgage, he received one copy of the TILA Notice of Right to Cancel ("NORTC") form, and his wife received one copy of the NORTC form. (*Id.*

at ¶ 5). Also during the closing, Robbins and his wife signed a document entitled "Certificate (That Customer Does Not Rescind Transaction)" (the "Certificate"). (*Id.* at ¶ 7). The Certificate notes that Robbins, his wife, and CSMC entered into the transaction on October 6, 2006. (Blythin Decl. Ex. 1) (Docket #19-1). The Certificate acknowledges that both Robbins and his wife received two copies of the NORTC form. (*Id.*). It also states "whereas more than 3 business days have elapsed since the undersigned received the [NORTC form] and other [TILA] disclosures concerning this transaction…the undersigned…certify that they have not exercised their right to rescind; that they do not wish to and will not rescind said transaction…" (*Id.*). The bottom of the Certificate is dated October 6, 2006. (*Id.*).

On March 29, 2009, CSMC went into receivership, and the loan was thereafter assigned to Nationwide. (Pl.'s Br. in Supp. Summ. J. at 2; Def.'s Proposed Statement of Fact ¶ 5). On September 2, 2009, plaintiff mailed a notice of rescission to CSMC. (PSMF ¶ 17). Nationwide has not rescinded the loan. (PSMF ¶ 18). With these facts in mind, the court now turns to the issues at hand.

2.  Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over

"material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

"The initial burden is on the moving party…to demonstrate that there is no material question of fact with respect to an essential element of the nonmoving party's case." *Delta Consulting Group, Inc. v. R. Randle Constr., Inc.,* 554 F.3d 1133, 1137 (7th Cir. 2009) (quoting *Cody v. Harris*, 409 F.3d 853, 860 (7th Cir. 2005)). Once the movant satisfies this initial burden, the burden then shifts to the nonmoving party who "may not rest upon the mere allegations or denials of his pleading, but…must set forth specific facts showing that there is a genuine issue for trial." *Doe v. Cunningham*, 30 F.3d 879, 883 (7th Cir. 1994) (quoting *Anderson*, 477 U.S. at 248). There is no issue for trial unless the nonmoving party demonstrates that there is *sufficient evidence* in the nonmoving party's favor for a jury to return a verdict for that

party. *Anderson*, 477 U.S. at 249. If the evidence is "merely colorable" or is "not significantly probative," summary judgment may be granted. *Id.* Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact. In ruling on a summary judgment motion, the court must view the evidence, plus all inferences reasonably drawn from the evidence, in the light most favorable to the non-moving party. *TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 630 (7th Cir. 2007).

3.   Discussion

In support of his motion for summary judgment, Robbins argues that the undisputed facts establish a violation of Regulation Z and TILA because plaintiff was provided with conflicting forms at the closing of the mortgage which violate the requirement that a borrower be presented with a notice of right to cancel that is "clear and conspicuous." 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23. Moreover, Robbins contends that he is entitled to summary judgment because it is undisputed that CSMC gave Robbins and his wife only one complete copy each of the NORTC form at the closing of the loan, when CSMC was required to provide each borrower with two complete forms. Nationwide also moves for summary judgment, arguing that Robbins's TILA rescission claim against Nationwide is time barred because plaintiff failed to exercise his right to rescission against Nationwide within three years of the loan consummation. Nationwide also asserts that it is entitled to summary judgment as to plaintiff's claim that he and his wife did not receive two complete copies of the NORTC forms because Robbins has failed to rebut the presumption of receipt which arises when a debtor signs

an acknowledgment at the closing confirming delivery of the requisite disclosures. *See* 15 U.S.C. § 1635(c). Lastly, Nationwide argues that Robbins's TILA claims fail because he neglected to join an indispensible party to this action – his wife. Thus, the main issues before the court are whether the NORTC documents provided to plaintiff in connection with the 2006 loan provided Robbins with sufficient notice of his right to cancel the loan and, if not, whether Robbins timely elected to rescind the loan.

TILA provides that borrowers have the right to rescind a loan transaction. Rescission is "a process in which the creditor terminates its security interest and returns any payments made by the debtor in exchange for the debtor's return of all funds or property received from the creditor (usually the loan proceeds)." *Andrews v. Chevy Chase Bank*, 545 F.3d 570, 573 (7th Cir. 2008) (citing 15 U.S.C. §1635(a)). TILA provides borrowers with a three-day "cooling off" period after a loan transaction is completed, during which time such borrowers have a right to rescind certain loan transactions. *Id.*; 15 U.S.C. § 1635(a). In addition, TILA requires the lender to provide the borrower with two copies of a notice clearly and conspicuously disclosing the right to rescind. If a lender fails to do so, the time which the borrower has to rescind is extended from three days to three years. 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3). A creditor's failure to honor a valid rescission request made pursuant to § 1635 can subject that creditor to actual and statutory damages as enumerated in TILA. *See* 15 U.S.C. § 1640(a) (stating that "any creditor who fails to comply with any requirement imposed under...section 1635, ...is liable to such person..." for statutory damages, including "the costs

of the action, together with a reasonable attorney's fee as determined by the court").

       3.1     Clear and Conspicuous Requirement

First, Robbins argues he is entitled to summary judgment because the practice of having borrowers, such as him and his wife, sign a certificate electing not to cancel the loan at the closing of the mortgage, while at the same time, presenting them with a notice of their right to cancel, is a violation of TILA's requirement that creditors "clearly and conspicuously disclose" the borrower's rescission rights. 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23. The court agrees.

TILA strictly limits waiver of the three-day rescission right to specified emergency situations, and it requires that the waiver be handwritten. 15 U.S.C. § 1635(d); 12 C.F.R. § 226.23(e)(1). In this case, there is no indication that an emergency reason existed for waiver of the right to rescission. Yet, the borrowers were still provided with a certification of non-cancellation at the closing. The mere proffering of such a document at the time of closing – not to mention requesting the borrower's signature on that document – would imply to any reasonable borrower that waiver of the right to rescission is generally possible within the three-day cooling off period. However, as noted above, that is simply not the case. Moreover, presenting the certificate of non-cancellation on the day of the transaction contradicts the purpose of the three-day cooling off period, which is an opportunity for the consumer to consider the terms of the transaction divorced from the often-times frenzied and overwhelming nature of the actual closing transaction. Indeed, if Robbins determined he made a mistake the day after the closing and desired to rescind the transaction, it is reasonable that he would not have exercised

the right as a direct result of being provided with and signing the certificate of non-cancellation. Lastly, the court finds that a reasonable borrower would likely be confused by a creditor's placement of the acknowledgment of receipt of the notice of right to cancel and the waiver of that right on the same document.

Most courts that have addressed a similar issue have also concluded that the lenders violated TILA. *See e.g. Rand Corp. v. Moua,* 559 F.3d 842, 847 (8th Cir. 2009) (stating that requiring borrowers to sign false and contradictory statements is a paradigm for confusion); *Rodash v. AIB Mortgage Co.*, 16 F.3d 1142, 1146–47 (11th Cir. 1994) (stating that lender's presentation of a form waiving borrower's rescission rights on the same day that borrower learned of such rights violated the TILA); *Tenney v. Deutsche Bank Trust Corp.*, 2009 WL 415510, at *3–5 (D. Mass. Jan. 26, 2009) (stating that having a borrower sign post-dated "Certificate" confirming decision not to rescind at closing would confuse and mislead the average consumer); *Travis v. Prime Lending*, 2008 WL 2397330, at *2 (W.D.Va. June 2, 2008) (stating that if lender had borrower post-date statement of non-rescission, lender violated the TILA); *Adams v. Nationscredit Fin. Servs. Corp.*, 351 F.Supp.2d 829, 833–34 (N.D.Ill. 2004) (stating that requiring borrower to sign confirmation of non-cancellation at closing violates the TILA); *Rodrigues v. Members Mortgage Co.*, 323 F.Supp.2d 202, 209 (D.Mass. 2004) (stating that asking borrower to sign waiver form at closing misleading); *Daniels v. Equitable Bank, SSB*, 746 F.Supp.2d 1021, 1024 (E.D. Wis. 2010) (stating that having a borrower sign a post-dated form electing not to rescind the mortgage on the date of closing violated TILA). Accordingly, the court finds that when viewed together, the

NORTC forms and the certification of non-cancellation provided to the plaintiff and his wife do not constitute a "clear and conspicuous" disclosure of the three-day right to rescission under TILA as they are contradictory and would likely confuse a reasonable borrower.[1]

  3.2  NORTC Forms

Plaintiff also argues that he is entitled to summary judgment because CSMC gave Robbins and his wife only one complete copy each of the NORTC at the closing of the loan when TILA requires creditors to provide borrowers with two copies of the notice of the right to rescind. 15 U.S.C. § 1635(a); 12 C.F.R. §226.23(b)(1). For its part, the defendant argues it is entitled to summary judgment as to this claim because Robbins and his wife acknowledged receiving two copies of the NORTC.

TILA provides that "[n]otwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this subchapter by a person to whom information, forms, and a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof." 15 U.S.C. § 1635(c). In this case, Robbins and his wife signed an acknowledgment that they received two copies of the NORTC form. (Blythin Decl. Ex. 1) (Docket #19-1). Consequently, there is a rebuttable presumption that Robbins and his wife received duplicate copies of the NORTC.

---

[1] Contrary to defendant's argument that Robbins's "clear and conspicuous" argument is a new claim that was not contained in his Amended Complaint and it should, therefore, be disregarded, the court finds that it is simply an alternative argument that CSMC violated TILA by failing to give proper notice to the plaintiff of his right to cancel.

Thus, the court must determine whether Robbins has produced sufficient evidence to rebut the presumption that he and his wife received two copies each of the notice of the right to rescind at the closing, such that summary judgment in favor of the defendant is defeated. Here, to rebut the presumption of delivery, Robbins offers only his own affidavit, attesting that he and his wife each received a single copy of the NORTC form. (Robbins Aff. ¶ 7).

The statute and regulations are silent as to the quantity and quality of evidence necessary to overcome the rebuttable presumption established by TILA. However, in a recent decision, the Seventh Circuit has implied that in the TILA context, even the mere assertion by the borrower that he did not receive the requisite copies is potentially enough evidence of disputed material facts to prevent summary judgment. *See Marr v. Bank of America, N.A.*, No. 11-1424, slip op. at 10 (7th Cir. Dec. 6, 2011). Accordingly, the court finds that Robbins has offered enough evidence to rebut the presumption created by his and his wife's acknowledgment that they received two copies of the NORTC. As such, neither party is entitled to summary judgment as to this claim. Instead, both parties are entitled to the opportunity to convince a

jury that their version of events regarding the number of NORTC forms given to the borrowers at the closing is the correct version.[2]

### 3.3 Timeliness of Rescission

Having established that a violation of the TILA requirement for "clear and conspicuous" disclosures occurred, the statutory period during which Robbins had a right to elect to rescind was extended to three years. However, the defendant argues it is entitled to summary judgment because the plaintiff never properly elected to rescind his loan within the three-year period. Specifically, Nationwide argues that plaintiff sent the notice of rescission to CSMC, not Nationwide, even though CSMC was not the actual holder of the loan at the time the notice was sent. As this notice was not sent to the proper party within the appropriate time period, and this lawsuit was filed well after the three-year period expired, Nationwide argues that plaintiff's TILA claims are time-barred.

For his part, plaintiff admits that he sent the notice of rescission to CSMC, not Nationwide. (PSMF ¶ 17). Yet, Robbins argues that, based on the plain language of TILA, he was only required to provide notice of rescission to the original creditor of the mortgage loan – here, CSMC – and that such

---

[2] Nationwide also argues that the evidence shows two copies of the NORTC forms were delivered to both Robbins and his wife at the closing. Specifically, Nationwide states that two distinct copies of the NORTC were produced in this litigation – an unsigned copy in the plaintiff's possession and a signed copy in Nationwide's possession. Accordingly, Nationwide asserts that two copies were clearly delivered to the plaintiff at closing, even though Nationwide ultimately retained one of the copies. The court finds this argument unavailing. The documents retained by the lender are insufficient to entitle a lender to summary judgment because TILA requires disclosures "in a form that the consumer may keep." 12 C.F.R. § 226.17(a)(1).

notice to the original creditor was sufficient to bind any subsequent assignees to the rescission demand. Thus, the issue for the court is whether Robbins properly exercised his right to rescission within the three-year period by mailing notice to the original creditor, CSMC, rather than to the assignee, Nationwide.

Regulation Z provides that "to exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication." 12 C.F.R. § 226.23(a)(2). Furthermore, Regulation Z also provides creditors with 20 days from the date that the notice of a rescission is received to "return any money or property that has been given to anyone in connection with the transaction and [ ] take any action necessary to reflect the termination of the security interest." 12 C.F.R. § 226.23(d)(2).

Plaintiff points to the fact that both § 1635 and Regulation Z state that a borrower should notify the "creditor" to effectuate rescission. 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(a)(2). Plaintiff relies on the definition of "creditor" found in 15 U.S.C. § 1602(f) as the "person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness." Robbins argues that, since CSMC was the creditor to whom the loan was initially payable, and since § 1635(a) requires only that a "creditor" be notified of the intent to rescind, his notice of rescission was effective as to Nationwide. Robbins also asserts that public policy considerations favor binding assignees to rescission demands made on original creditors. In this regard, Robbins states that ascertaining the identities of assignees can be difficult for borrowers since the given assignee of a particular loan is not always easily discovered. Moreover, Robbins

contends that any other interpretation of "creditor" would allow assignees to avoid TILA liability by refusing to identify the correct assignee's identity or by assigning a loan to an unknown party after receiving a rescission notice. Indeed, in this case, Robbins asserts that Nationwide deliberately misled Robbins's counsel as to the real identity of the loan holder in response to a letter he sent to Nationwide on June 30, 2010. While letters exchanged between the parties indicate that there was certainly confusion over the true identity of the loan holder, it is by no means clear that Nationwide *deliberately* misled Robbins by stating that the loan holder was Ginnie Mae, when Ginnie Mae was only the guarantor of timely payments on the pool of mortgage-backed securities of which Robbins's mortgage was a part. (*See* Am. Compl. Exs. A-F). Yet, even so, the confusion in this case – whether deliberately caused or not – is itself an indicator that it can be difficult not only for a consumer, but also for creditors, to discover the current owner of a loan. At least three district courts within the Seventh Circuit have sided with plaintiff on this issue, finding that service of notice on the original lender was effective as to an assignee. *See Hubbard v. Ameriquest Mortg. Co.*, 624 F.Supp.2d 913, 921–22 (N.D.Ill. 2008) (concluding that an election to rescind sent to the original creditor is sufficient to seek rescission against an assignee); *Schmit v. Bank United FSB et al.*, No. 08 C 4575, 2009 WL 320490, at *3 (N.D.Ill. Feb.6, 2009) (same); *Mattek v. Deutsche Bank Nat. Trust Co.,* 766 F.Supp.2d 899, 902 (E.D. Wis. 2011) (same).

However, the court must also consider this factual scenario from the standpoint of the assignee. The defendant argues that adopting plaintiff's interpretation of the notice requirement would, in certain circumstances,

have the absurd effect of subjecting assignees to rescission and damages when those assignees have no means of discovering that a rescission demand has been made. As the district court in *Harris v. OSI Fin. Servs. Inc.,* 595 F.Supp.2d 885, 897 (N.D. Ill. 2009) aptly explained:

> TILA explicitly states that an assignee of a mortgage is "subject to all claims and defenses with respect to the mortgage that the consumer could assert against the creditor of the mortgage…" 15 U.S.C. § 1641(d)(1)…Notwithstanding the fact that TILA does not explicitly mention assignees in its rescission notice provisions (just as TILA does not explicitly mention assignees in other provisions where assignees are in fact implicated, including other rescission provisions), there is no indication from the language of TILA that assignees should not be entitled to the same rights to notice of rescission as original creditors.

*Id.* The *Harris* court went on to conclude that the plaintiff could not effectuate notice of rescission on the assignee by simply notifying the original lender. *Id.*

After considering the rationales of the district courts that have already weighed in on this issue, the public policy considerations, and the statutory language, the court opts to follow the approach of the *Hubbard* court. Thus, the court finds that a proper rescission notice to an original creditor rescinds the subject transaction as to the assignee. Though the court appreciates the burden this finding places on assignees and its potential to subject them to rescission and damages in some cases where they have no means of discovering that a rescission demand had been made, the court finds that adopting an opposite approach would place too significant a burden on consumers and, ultimately, fly in the face of TILA's main purpose – consumer protection. Accordingly, Robbins's notice of rescission, sent to

CSMC within the three-year period, is effective notice as to Nationwide. Therefore, the defendants are not entitled to summary judgment in this respect. In turn, plaintiff is entitled to summary judgment on his claim for rescission due to a violation of TILA's "clear and conspicuous" requirement.

    3.4    Indispensible Party

Finally, the defendant contends that Robbins's TILA claims fail because he neglected to join an indispensible party. Specifically, Nationwide argues that both Robbins and his wife, Sarah Robbins, owned the home whose mortgage is the subject of this litigation, and that both spouses signed for the home mortgage with CSMC on October 6, 2006. Nationwide asserts that as a co-owner of the property, and in light of Wisconsin's status as a community property state, Ms. Robbins is an indispensible party. Though this argument is not without substance, the court finds that, practically speaking, Ms. Robbins need not have been joined to this lawsuit.

TILA and Regulation Z allow *any* borrower obligated on the loan to rescind, regardless of whether other borrowers do or do not want to rescind, and the statute and regulations provide that one consumer's exercise of the right to rescind is effective as to all consumers. 12 C.F.R. § 226.23(a)(1), (a)(4). Moreover, as noted by the plaintiff, the Official Staff Commentary specifically addresses the situation in this action, where spouses are joint obligors on the mortgage loan: "[w]hen more than one consumer has the right to rescind a transaction, any of them may exercise that right and cancel the transaction on behalf of all. For example, if both husband and wife have the right to rescind a transaction, either spouse acting alone may exercise the right and both are bound by the rescission." 12 C.F.R. Supp. Pt. 226, Supp. I ¶ 23(a)(4)(1). Furthermore, in the Seventh Circuit, rescission of the loan

rescinds the entire loan transaction. *Handy v. Anchor Mortg. Corp.,* 464 F.3d 760 (7th Cir. 2006). Thus, plaintiff has rescinded the entire loan transaction, not just his interest. Accordingly, the court finds that Ms. Robbins is not an indispensible party.

    3.5    Remedies

Having found that Robbins is entitled to rescission of his mortgage transaction, the court moves to the question of appropriate remedies. To properly effectuate plaintiff's timely invoked right to rescission, the defendant must determine the amounts of interest and fees that it received from plaintiff while the loan was outstanding and reimburse plaintiff in those amounts. *See Handy,* 464 F.3d at 766 ("Given the statute, [defendant] forfeits its right to collect interest, and so it must reimburse [plaintiff] for any interest paid while the loan was outstanding"); *see also Miranda v. Universal Financial Group, Inc.,* 459 F.Supp.2d 760, 765 (N.D.Ill. 2006) ("Under § 1635(b), a borrower who exercises the right to rescind is entitled to the return of any payments made on the loan"). Only then can the parties be returned to the status quo that existed before the loan was made.

Additionally, the parties should keep in mind that rescission under TILA is considered a purely personal remedy. *Andrews v. Chevy Chase Bank,* 545 F.3d 570, 573 (7th Cir. 2008). Thus, rescission is intended to operate privately, at least initially, "'with the creditor and debtor working out the logistics of a given rescission.'" *Id.* at 574 (quoting *McKenna v. First Horizon Home Loan Corp.,* 475 F.3d 418, 421 (1st Cir. 2007)). The statute sets forth certain deadlines and duties that apply to the creditor upon receipt of a notice of rescission from the debtor. *See* § 1635(b). These procedures apply

"except when otherwise ordered by a court." *Id.* As such, the court directs the parties to attempt resolution of the rescission privately in accordance with the court's order and following the procedures set forth in § 1635(b). If a disagreement over the particulars of the rescission should arise, only then should the parties request the court's assistance in tailoring a remedy.

As to statutory damages, the plaintiff argues he is entitled to damages in the range of $400 to $4,000 for both the disclosure violations and Nationwide's failure to rescind. While the right to rescission is equally enforceable against creditors and assignees, unlike a creditor, an assignee is not liable for statutory damages based on the underlying TILA violation unless it is apparent on the face of the disclosure statement or assigned documents. 15 U.S.C. § 1641(a); *see Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689, 691-92 (7th Cir.1998) (affirming dismissal as to assignees from whom plaintiffs sought damages because TILA precludes liability unless violation apparent on face of disclosure statement or other assigned documents).

In this case, the only violation at this point in the proceedings is the creditor's failure to clearly and conspicuously disclose the borrower's right to rescind the transaction via conflicting and confusing documents provided to Robbins and his wife – namely, a certificate of non-cancellation, including an acknowledgment of receipt of the requisite disclosures and an NORTC form. Nationwide argues that the Certificate is not itself a "disclosure statement" pursuant to § 1641 and, therefore, any violation could not have been apparent on the face of a disclosure statement. However, case law has made clear that statutory damages may be awarded against an assignee if the subject TILA violation is apparent on the face of the disclosure statement *or*

*the assigned documents.* 15 U.S.C. § 1641(a); *see Taylor v. Quality Hyundai, Inc.*, 150 F.3d at 691-92. Thus, because the violation stems from two conflicting documents – one of which is a disclosure statement, and one of which is not – so long as the Certificate can be said to be an "assigned document" the violation would be apparent on the face of these two documents. Here, Nationwide produced the Certificate in discovery. (PSMF ¶ 16). Accordingly, the Certificate constitutes an assigned document. Therefore, the court finds that the TILA violation was apparent on the face of the disclosure statement and the assigned documents. As a result, Robbins is entitled to statutory damages in the amount of $1,000 for this violation.

The question of whether assignees are liable for statutory damages for their failure to rescind upon receipt of a timely rescission demand, as well as the question of liability for attorney's fees, have been resolved by several courts based on whether the underlying TILA violation was apparent on the face of the assigned document. Assignees generally have not been held liable for statutory damages for failure to rescind or for attorney's fees where the underlying TILA violation was not apparent on the face of the document in question. *See Bills v. BNC Mortg., Inc.,* 502 F.Supp.2d 773, 776-77 (N.D. Ill. 2007); *Walker v. Gateway Financial Corp.,* 286 F.Supp.2d 965, 968-69 (N.D.Ill. 2003). On the other hand, assignees have been found liable as to those remedies where the underlying violation was facially apparent. *See Lippner v. Deutsche Bank National Trust Co.*, 544 F.Supp.2d 695, 704 (N.D.Ill. 2008).

While this court agrees that assignees should be held liable for statutory damages for failure to rescind when the underlying violation was facially apparent to the assignee, in this instance, the court finds it

unreasonable to assess statutory damages for failure to rescind as Nationwide did not receive actual notice of Robbins's election to exercise his right to rescission until the filing of this lawsuit. At the same time, however, the court will award attorney's fees to the plaintiff as he has successfully achieved court action to enforce his TILA rights. *See e.g. Fairbanks Capital Corp.*, 225 F.Supp.2d at 917 (concluding that an assignee that refuses to honor a proper demand for rescission may in fact be held liable under the TILA for attorney's fees); *Payton v. New Century Mortg. Corp.,* 2003 WL 22349118, at *7-8 (Oct. 14, 2003) (finding that statutory damages could not be imposed on assignee because violation was not apparent on its face, but that award of attorney's fees against assignee was appropriate because plaintiff had brought a successful action for rescission). As the court explained in *Fairbanks*, "denying a consumer whose demand for rescission was refused by an assignee the ability to recover attorney's fees upon successful court action to enforce her TILA rights would undermine the policies underlying the TILA and its private enforcement mechanism" and "chill[] [consumers] from seeking enforcement even in meritorious cases, as it is common for TILA plaintiffs to be persons of limited means who are unable to finance expensive litigation." 225 F.Supp.2d at 917. Accordingly, though plaintiff is not entitled to statutory damages for the defendants' failure to rescind the transaction, plaintiff is entitled to reasonable attorney's fees because he has brought a successful action for rescission.

     Accordingly,

IT IS ORDERED that plaintiff's motion for summary judgment (Docket #15) be and the same is hereby GRANTED in part and DENIED in part; plaintiff is entitled to rescission of his mortgage pursuant to 15 U.S.C. § 1635, to statutory damages in the amount of $1,000.00, and to reasonable attorney's fees; and

IT IS FURTHER ORDERED that defendant's motion for summary judgment (Docket #23) be and the same is hereby DENIED.

Dated at Milwaukee, Wisconsin, this 30th day of December, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge